[Cite as *Rose of Sharon Fence Supply, Ltd. v. Davis*, 2016-Ohio-924.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102804**

## ROSE OF SHARON FENCE SUPPLY, LTD.

PLAINTIFF-APPELLEE

vs.

## MICHAEL DAVIS D.B.A. SUPERIOR FENCE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-810353

**BEFORE:** Laster Mays, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 10, 2016

**ATTORNEY FOR APPELLANT**

Mark E. Porter
6480 Rockside Woods Boulevard, South
Suite 360
Independence, Ohio 44131


**ATTORNEYS FOR APPELLEE**

Andrew C. Voorhees
Matthew G. Burg
Weltman Weinberg & Reis Co., L.P.A.
323 Lakeside Avenue, West
Lakeside Place, Suite 200
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

**{¶1}** Defendant-appellant Michael Davis d.b.a. Superior Fence ("Davis") appeals the trial court's judgment awarding damages to plaintiff-appellee Rose of Sharon Fence Supply, Ltd. ("Rose") in the amount of $26,401.87 in an action on account. We affirm the trial court's decision.

## I.     BACKGROUND AND FACTS

**{¶2}** Rose is a supplier of materials for the construction and installation of fences. Davis, a fence contractor, purchased goods from Rose. Rose carries its own accounts for purchases. (Tr. 11 and 67.) Davis's account was opened in 2002 and carried an interest rate of 18 percent. (Tr. 9 and 66.)

**{¶3}** Rose alleged that Davis defaulted on his payments in late 2012 to early 2013. On July 10, 2013, Rose initiated a court action on account against Davis claiming a balance due on account in the amount of $42,188.46, plus finance charges, totaling $44,927.36 as of May 13, 2013. Davis responded that Rose's accounting was incorrect and all purchases had been paid in full.

### A.     Bench Trial

**{¶4}** A bench trial ensued on February 26, 2015, with the live testimony of Davis and Ted Churchia ("Churchia"), the general manager of Rose. The September 11, 2014 deposition testimony of former Rose employee, Rosemary O'Brien ("O'Brien"), was entered into the record by agreement of the parties.[1]

---

[1] O'Brien had relocated to Michigan earlier in 2014, outside of the subpoena power of the

### 1. Churchia

**{¶5}** Churchia was hired by Rose as a general manager approximately three years prior to the trial. (Tr. 7.) The company accounts were computerized using a new accounting record in April 2012. (Tr. 10.) He confirmed that Davis's account had been opened in 2002, and stated that Davis's credit line was "in the neighborhood of $30,000." (Tr. 45.) The account deficit was brought to Davis's attention in early 2012. Davis denied owing money but failed to provide any documentation to Rose substantiating his position. (Tr. 12.)

**{¶6}** Churchia testified on cross-examination that there was a transition in ownership of Rose in April 2012. Churchia joined the company as part of the new management team. (Tr. 18.) Prior to the ownership transition, according to the accounting records, Davis was generally making payments as required. (Tr. 19.) Finance charges accrued on the account until the date the complaint was filed. (Tr. 22.)

**{¶7}** Davis's counsel directed Churchia's attention to apparent discrepancies in Rose's accounting statements, resulting in conflicting final balance amounts. The balance set forth in the account statement attached to the complaint is $42,188.46, the balance listed on a February 28, 2013 statement is $41,549.02, and the May 31, 2013 statement lists a balance of $44,656.88. The statements also contained payment and credit discrepancies.

---

court. (Tr. 63 and 64.)

**{¶8}** Churchia responded that a spreadsheet was reviewed with Davis at a November 2012 meeting that provided a complete record of transactions up to that point. (Tr. 40.) He also explained that the accounting system allows him to select which transactions are to be included in a report but that does not mean the payments and credits were never applied to the balance. (Tr. 49.)

**{¶9}** In response to the trial court's request for elaboration, Churchia stated:

> It's the default selection of our system. And many customers have requested that the payment, that the page, the statement page be simplified so that's what we selected. The reason one payment appears on there [the statement] is because it was not posted to the general ledger. So that's why it never came off. That doesn't mean there's not payments on the account.

(Tr. 50.)

Churchia also purported that the February 6, 2014 report entitled "Detailed Historical Aged Trial Balance," contained a full accounting of transactions.

### 2. Davis

**{¶10}** Davis confirmed the existence of the account with Rose but stated his credit limit was only $3,000 because he did not want to owe a large sum. (Tr. 67.) Davis had a good relationship with Rose over the years and he worked closely with O'Brien. In order to perform services involving larger sums without assuming liability for a larger debt, Davis and O'Brien arranged for Rose to supply the material for bigger jobs, Davis supplied the labor, and Davis's customers paid O'Brien for the materials before paying Davis. (Tr. 68 and 70.)

**{¶11}** O'Brien mentored and worked with Davis, but things changed when ownership shifted. (Tr. 71.) "[W]hen things changed hands and when Ted come along, it fell apart. And there was times when I called [O'Brien] and said, well, I've already paid you for this. Oh, oh, that did not make it into the computer. It's an honest mistake." (Tr. 71 and 72.)

**{¶12}** When Churchia notified Davis of a $42,000 balance, Davis set up a meeting that took place in December 2012 with O'Brien. According to Davis, Churchia refused to get involved in meetings between Davis and O'Brien because Churchia did not know, "the extent of what we was [sic] doing and how we were doing business." (Tr. 69, 70, and 82.) Since Rose normally contacted him if he owed $5,000, Davis was surprised at the high balance and challenged Rose to provide proof that he owed that amount. He also said that he would pay the debt, if valid. *Id.*

**{¶13}** Davis believed he had a credit balance with Rose and that "an honest mistake" had been made. (Tr. 72.) "That's why I went out and went through the books and the log, what they had with their record books. * * * And I said, well, if anything, maybe I've over paid you $1,300." Davis based his assessment on various discussions with O'Brien regarding invoice errors, "[a]nd [based on] my records and her records in the book, the ledger she had, we were on point, all the way up to $1,300 [to his credit]." (Tr. 73.)

**{¶14}** Davis said that the $40,000 check payment in February 2012 represented a project he was working on with "the city" and that was who the funds belonged to. (Tr.

74, 75, and 76.) This arrangement allowed materials to be shipped without his owing large sums of money. *Id.*

{¶15} Davis believed the problem was that Rose was "adding but not subtracting." (Tr. 78.) After encountering the initial failure to credit his account, Davis had his secretary track invoices and payments. The secretary told him it appeared that Rose was billing for items already paid. (Tr. 80 and 81.)

{¶16} Davis said he did not have an outstanding balance with Rose after paying the $40,000 in February 2012. "Once the $40,000 was absorbed and spent, that was the end of our dealing [for the city project]. That was it." (Tr. 81 and 82.) After several invoice disputes, by the end of 2012, Churchia placed Davis on a "cash only" status. (Tr. 85.)

{¶17} Davis maintained during cross-examination that he did not owe the $42,000. He does not employ an accountant but he did write things down in a ledger book. However, Davis did not bring the ledger to court. (Tr. 87.)

### 3. O'Brien

{¶18} O'Brien testified at deposition that she was the managing member of Rose for 12 years, until the sale of the business to Vulcan Holdings in April 2012. (Depo. 5 and 6.) She performed accounting and consulting services after the ownership change until she moved to Michigan in May 2014. (Depo. 7 and 8.)

{¶19} The account designations were revised to reflect the change by adding "old" to the end of the account name, to distinguish between transactions pre- and

post-transfer. (Depo. 13.) The sale of the company did not include receivables and payables. (Depo. 16.) The $40,000 payment by Davis created a credit balance with part of the funds filed to outstanding invoices from December 2011 forward. At the time of transfer of the Rose accounts on March 29, 2012, Davis had a credit of $14,644.79. (Depo. 16.) O'Brien stated that, as Davis purchased additional materials, she applied the credits to those purchases and the final credit balance was applied to the June 18, 2012 invoice. (Depo. 35.)

{¶20} O'Brien prepared the spreadsheet that she reviewed with Davis during their December 2012 meeting. The spreadsheet included invoices as well as payments. Davis denied owing the funds. (Depo. 36 and 37.)

{¶21} O'Brien addressed the Detailed Historical and Trial Balance Report generated February 6, 2014,[2] purported to be an accounting of transactions on Davis's account from 2002 forward. The report reflects a credit balance of $14,644.79 on the old account at the point of ownership transfer. The beginning balance for Davis under the new ownership is listed as $1,561.61 under the column "91 days and over."

{¶22} The final, total balance due to current Rose ownership is listed as $47,317.18. O'Brien confirmed that the February 6, 2014 statement did not contain a running balance, only included invoices, and the absence of payments and credits on the balance would indicate that the total balance "would be inaccurate." (Depo. 39.)

B.    Final Adjudication

---

[2]   The report that Churchia testified during trial represented a full, detailed accounting of

**{¶23}** The trial court set forth its factual findings, including the conflicts in testimony, and in the Rose accounting statements as well as Davis's failure to provide evidence supporting his position. The court then proceeded to calculate the damages:

> [U]pon cross-examination Churchia was presented with numerous different accountings that the plaintiff had provided to the defendant, all of which indicated different amounts owed. Additionally, those accountings did not include payments made by the defendant or any other credits made to his account. * * *
>
> While the court is convinced that the defendant has an outstanding balance with the plaintiff, the court further finds that the plaintiff's accounting is highly suspect. For example, plaintiff's exhibit 1 shows on page 17 that the defendant's account had a credit of $14,644.79 as of March 29, 2012, but it does not appear that such a credit was applied to the final balance as submitted by the plaintiff. However, the court finds that plaintiff's exhibit 1 offers the best evidence to determine the balance owed by the defendant. Taking into account all of the invoices issued to the defendant from March 29, 2012 until December 20, 2012, the date of the last invoice listed on Plaintiff's exhibit 1, the total is $73,277.14. (See attached.) A similar accounting of all of the payments and discounts applied to the defendant's account yields credits in the amount of $26,401.87. Therefore, between March 29, 2012 and December 20, 2012 the defendant's account ended with a balance of $41,046.66. After applying the $14,644.79 credit that the defendant's account carried as of March 29, 2012, the balance due is $26,401.87. Accordingly, the court hereby enters judgment in favor of the plaintiff in the amount of $26,401.87.

**{¶24}** This appeal ensued.

## II. ASSIGNMENT OF ERROR

**{¶25}** Davis poses a single assignment of error: that the trial court erred in rendering judgment in favor of Rose in the amount of $26,401.87 where Rose failed to

---

Davis's transactions.

sustain its burden of proof by a preponderance of the evidence and the judgment was against the manifest weight of the evidence. We do not agree.

## III. STANDARD OF REVIEW

{¶26} The appellate court's standard of review is limited to a determination of whether, as a matter of law, there existed a preponderance of reliable, probative, and substantial evidence to support the trial court's findings. In order to determine whether a lower court's judgment is supported by a preponderance of the evidence, a reviewing court must necessarily determine whether that judgment is against the weight of the evidence. *In re Annexation of Territory of Riveredge Twp.*, 46 Ohio App.3d 29, 35, 545 N.E.2d 1287 (8th Dist.1988).

{¶27} When considering a manifest weight challenge, we are guided by the presumption that, "the trier of fact is in the best position to take into account inconsistencies, along with the witnesses's manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible." *State v. Kurtz,* 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26; *State v. Lilliard,* 8th Dist. Cuyahoga Nos. 99382, 99383, and 99385, 2013-Ohio-4906, ¶ 93. *See also Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "The civil-manifest-weight-of-the-evidence standard affords the lower court more deference th[a]n does the criminal standard." *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 26.

**{¶28}** We further observe that there is a presumption in a bench trial that the trial court considered only evidence that was reliable, relevant, and competent in rendering its decision unless it affirmatively appears to the contrary. *Sonis v. Rasner*, 2015-Ohio-3028, 39 N.E.3d 871, ¶ 70 (8th Dist.), citing *State v. Pleban,* 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 45. ("There is a presumption in a bench trial that the trial judge knows and follows the law, and only considers matter properly before it.").

## IV. LAW AND ANALYSIS

**{¶29}** We have held that, in order to establish a prima facie case for money owed on an account, the account must reflect the name of the party being charged and must also contain:

> (1) a beginning balance; (2) listed items representing charges or debits; and (3) summarization of a running or developing balance of the amount claimed to be due. *Citibank, N.A. v. Katz*, 8th Dist. Cuyahoga No. 98753, 2013-Ohio-1041, ¶ 11, citing *Citibank (S.D.), N.A. v. Lesnick*, 11th Dist. Lake No. 2005-L-013, 2006-Ohio-1448, ¶ 9, quoting *Gabriele v. Reagan*, 57 Ohio App.3d 84, 87, 566 N.E.2d 684 (12th Dist.1988).

*Cach, L.L.C. v. Hutchinson*, 8th Dist. Cuyahoga No. 101288, 2014-Ohio-5148, ¶ 10.

**{¶30}** Davis argues that Rose failed to establish a prima facie case, directing our attention to the trial court's journal entry acknowledgment that "[p]laintiff's accounting is highly suspect." Having determined that Davis "owed something," the trial court selected the accounting it considered to constitute the "best evidence," and proceeded to assimilate the evidence, applying credits and payments, and awarded damages accordingly.

**{¶31}** It is not required that an account begin with a zero balance, though "'[c]ompetent testimony predicated upon firsthand knowledge may be offered to prove facts contained in business records.' *Discover Bank v. Paoletta*, 8th Dist. Cuyahoga No. 95223, 2010-Ohio-6031, ¶ 12." *Third Fed. Sav. Bank v. Cox*, 8th Dist. Cuyahoga No. 96871, 2012-Ohio-477, ¶ 15. Davis offers there has been no competent, credible evidence introduced to support the trial court's findings. The record does not support his position.

**{¶32}** The existence of the account was not disputed by the parties. As to the claim for damages, in addition to the documentary evidence, Rose provided, via Churchia and O'Brien, testimonial evidence substantiating a beginning balance, charges or debits, and a summary of a running or developing balance. Thus, Rose supported its initial burden establishing the existence of the account and the burden shifted to Davis. *See Cach, supra*.

**{¶33}** Davis offered in support of his denial, evidence of the $40,000 payment in February 2012, resulting in a credit balance and several other payments and credits occurring prior to the filing of the complaint. Davis also testified that he maintained a ledger of his financial transactions, yet he did not produce the ledger or other evidence such as cancelled checks to demonstrate that payments for all purchases had been remitted. (Tr. 87.) In addition, Davis did not refute making the purchases that Rose asserted remained unpaid.

**{¶34}** Evidence of conflicting balances on Rose's statements as presented by Davis was considered by the trial court. However, "[a]bsolute certainty of proof is not required, but there must be something upon which the court can form its judgment." *Gabriele v. Reagan*, 57 Ohio App.3d 84, 87, 566 N.E.2d 684 (12th Dist.1988), citing *Beckwith v. Cleveland Tel. Co.*, 17 Ohio C.C. (N.S.) 527, 32 Ohio C.D. 265 (1911). "Furthermore, an account stated will be taken as correct until shown by the party to whom it was rendered to be incorrect." *Discover Bank v. Paoletta*, 8th Dist. Cuyahoga No. 95223, 2010-Ohio-6031, ¶ 12, citing *Gabriele* at 87.

**{¶35}** As we previously recognized herein:

In regard to bench trials, "it is well established that it is the role of the trial judge to determine the credibility of witnesses and the weight to be given to their testimony. The trial court has a superior opportunity to observe the witnesses. Reviewing courts will not reverse a trial court's judgment on manifest-weight-of-the-evidence grounds when its determination is supported by some competent, credible evidence going to all essential elements of the case." *KP Adjusters, Inc. v. Prime Commercial Credit*, 8th Dist. Cuyahoga No. 73931, 1999 Ohio App. LEXIS 822 at *10-11 (Mar. 4, 1999), citing *Baker v. Conlan*, 5th Dist. Hamilton No. C-880630, 66 Ohio App.3d 454, 463, 585 N.E.2d 543 (1990), citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (May 24, 1978), syllabus.

*Riser Foods Co. v. Miles Food Ctr.*, 8th Dist. Cuyahoga No. 80233, 2002-Ohio-3111, ¶ 10.

**{¶36}** In light of the dearth of evidence supporting Davis's zero balance assertion, coupled with the documentary and testimonial evidence presented by Rose, the trial court determined that the evidence established that Davis was indebted to Rose and that Rose's calculation of payments and credits on the account was suspect. The trial

court then engaged in an analysis, based on the record of the purchases, payments, and credits by Davis and entered judgment accordingly.

{¶37} We find that the trial court's findings are supported by competent credible evidence going to the essential elements of the case, and are not against the manifest weight of the evidence. The trial court acted within its authority and discretion in determining the credibility of testimony and evidence.

{¶38} Davis's assignment of error is overruled and the judgment affirmed.

It is ordered that appellee recover from appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR