[Cite as *Surf City Investors, L.L.C. v. Lofti-Fard*, 2025-Ohio-1252.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| SURF CITY INVESTORS, LLC, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 113804 |
| v. | : | |
| ALI LOFTI-FARD, ET AL., | : | |
| Defendants-Appellants. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 10, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-936739

---

### *Appearances:*

Walker Novack Legal Group, LLC, Colin R. Beach, and
Adam A. Beane, *for appellee.*

James S. Wertheim LLC, and James S. Wertheim; and
Mark Stephen Shearer, *for appellants.*

MARY J. BOYLE, J.:

{¶ 1}   Defendants-appellants, Ali Lofti-Fard and Pardis Lofti-Fard ("the Lofti-Fards"), appeal the trial court's order and decree of foreclosure.  The Lofti-Fards raise the following assignments of error for review:

**Assignment of Error I:** The trial court erred by failing to require [Surf City] to prove the amount owed and provide an accounting of the amount the noteholder borrowed and paid to the [Lofti-Fards.]

**Assignment of Error II:** The trial court erred by considering inadmissible evidence.

**Assignment of Error III:** The trial court erred by inappropriately grant[ing] [Surf City's] Motion to Vacate the Order granting [the Lofti-Fards'] Summary Judgment Motion.

{¶ 2} For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 3} On May 31, 2002, the Lofti-Fards opened what is commonly known as a home equity line of credit ("HELOC") with National City Bank ("NCB") in the amount of $85,000.00, for a term of ten years. The HELOC was secured by a mortgage on the Lofti-Fards' property located at 2243 Georgia Drive, in Westlake, Ohio. In the process of obtaining the HELOC, the Lofti-Fards executed two documents. The first document was titled an "Equity Reserve Agreement," and the second document was titled an "Open End Real Estate Mortgage" ("the Mortgage"). (Surf City's exhibits A and B.) The "Equity Reserve Agreement" is specifically described in the Mortgage as a Note and will be referred to hereafter as "the Note" or "the HELOC." In November 2009, during the term of the HELOC, NCB merged with PNC Bank, National Association ("PNC").[1]

{¶ 4} Although the Note indicates that the HELOC ended in May 2012, it appears that it was extended to August 31, 2013. (Surf City's exhibit A). In May

---

[1] At trial, the court took judicial notice of the merger without objection.

2013, PNC began sending monthly notices to the Lofti-Fards advising them that the HELOC would end and mature on August 31, 2013, unless action was taken by the Lofti-Fards. (Surf City's exhibit F.) After the maturity date, PNC sent monthly past-due notices to the Lofti-Fards, with the amount due including interest and late fees. (Surf City's exhibit G.) The first past-due notice, dated September 16, 2013, stated that the amount past due was $297.26. By the second past-due notice, dated October 14, 2013, the past-due amount stated was $85,412.49, which ostensibly included the accelerated balance of $84,814.98 plus the $297.26 delineated in the first notice. The Lofti-Fards failed to respond or make any payments.

{¶ 5} Approximately six months later, in April 2014, PNC sent a letter advising the Lofti-Fards that their delinquent account had been charged off as a bad debt and that the entire accelerated balance of $87,238.99 was due in full. (Surf City's exhibit G.) A year later, in an effort to collect the debt, PNC sent a letter to the Lofti-Fards offering to settle the debt for $52,343.39. The Lofti-Fards did not respond. All of the PNC correspondence was sent to the Lofti-Fards' Westlake address.

{¶ 6} Thereafter, PNC sold and assigned the Note and the Mortgage to US Mortgage Resolution, LLC ("US Mortgage"), in 2019, which was recorded in Cuyahoga County, Ohio. Also in 2019, US Mortgage sold and assigned the Note and the Mortgage to CAN Financial LLC ("CAN Financial"), which was recorded in Cuyahoga County, Ohio. Finally, CAN Financial sold and assigned the Note and

the Mortgage to Surf City, in 2020, which was also recorded in Cuyahoga County, Ohio.

{¶ 7} Surf City filed a foreclosure action in September 2020 in the Cuyahoga County Court of Common Pleas seeking judgment on the Note and to foreclose on the Mortgage. They requested the principal amount of $84,814.98, with interest at the rate of 4.25% from September 28, 2014, as well as court costs. The Lofti-Fards filed an answer and counterclaims alleging violations of the Ohio Consumer Sales Practices Act, Federal Debt Collection Practices Act, and class-action relief (the "counterclaims"). Surf City replied. The case proceeded to the pretrial and discovery phase.

{¶ 8} After over a year of discovery, the Lofti-Fards filed a motion for summary judgment. They asked the court for judgment in favor of them for their counterclaims, as well as in favor of them for the claims Surf City filed against them. The motion was filed on November 28, 2021, and Surf City failed to respond. The trial court granted summary judgment in favor of the Lofti-Fards on January 20, 2022, and set a hearing date to determine damages.

{¶ 9} On January 25, 2022, Surf City filed a Civ.R. 60 (B) motion for relief from judgment arguing excusable neglect. The Lofti-Fards filed a brief in opposition, and Surf City replied. The matter proceeded to a hearing before the magistrate. Thereafter, the magistrate issued a decision granting Surf City's motion for relief from judgment. The Lofti-Fards filed objections to the

magistrate's decision. The trial court overruled the objections[2] and eventually adopted the magistrate's decision.[3]

{¶ 10} Because the Lofti-Fards' summary judgment motion remained pending, Surf City filed a brief in opposition. The Lofti-Fards filed a reply. After briefing was completed, the trial court denied the Lofti-Fards' motion for summary judgment and the case was set for trial.

{¶ 11} Prior to trial, the Lofti-Fards filed a motion in limine seeking to exclude all of Surf City's evidence arguing that the documents were irrelevant or prejudicial hearsay. This motion was ultimately denied. Although the Lofti-Fards made a demand for a jury trial, on the day of trial, they waived the jury demand, and a bench trial ensued.

{¶ 12} At trial, Gabe Kass ("Kass"), the managing member of Surf City, testified that he acquires mortgages for Surf City's financial portfolio. He testified that he is familiar with the books and records of Surf City and specifically the documents as it relates to the Lofti-Fards. Kass testified that Surf City owns the Lofti-Fards' Note and Mortgage and testified to the chain of assignments and

---

[2] The Lofti-Fards appealed the trial court's order overruling the Lofti-Fards' objections. This court sua sponte, dismissed the appeal for lack of a final appealable order. *Surf City Investors, LLD v. Ali Lofti-Fard*, 8th Dist. Cuyahoga No. 114848 (May 5, 2022).

[3] The Lofti-Fards then appealed the trial court's decision adopting the magistrate's decision. This court again dismissed the appeal explaining that the judgment granting a Civ.R. 60(B) motion for relief from judgment is interlocutory and not subject to appeal. *Surf City Investors, LLD v. Ali Lofti-Fard*, 8th Dist. Cuyahoga No. 111595 (Sept. 30, 2022).

transfers. (Surf City's exhibits A-E.) He indicated that Surf City was in possession of the original Note and Mortgage and the allonges and assignments. Kass testified that the Mortgage secured the open-end revolving line of credit in the amount of $85,000.00, referring to Surf City's exhibits A (the Note) and B (the Mortgage).

{¶ 13} Kass further testified to the documents Surf City received from Land Home Financial Services ("LHFS"), the loan servicing company that serviced the Lofti-Fards' loan for a time. Kass explained that LHFS has a computer portal that shares documents with Surf City that are sent to borrowers and debtors. In this case, the Lofti-Fards were notified by LHFS that Surf City was the new creditor. (Surf City's exhibit M.) Two of the documents addressed to the Lofti-Fards, and in the possession of Surf City, list the principal-balance owed as $84,814.98. (Surf City's exhibits L and N.)

{¶ 14} The Lofti-Fards objected to every document admitted through Kass during his testimony. On cross-examination, the Lofti-Fards established that Surf City was not in possession of any documents that establish a zero balance or draws on the HELOC.

{¶ 15} William Hardwick ("Hardwick") testified that he is the Senior Default Litigation Specialist at PNC Bank and has worked for PNC since the merger in 2009. He indicated that his job was to attend trials, hearings, mediations, and depositions. Hardwick explained that he reviewed payment histories, records, has access to all of the bank's systems, and can decipher the codes used in Surf City's exhibit J. Hardwick identified the PNC records that included Surf City's exhibits: (F) PNC

Notices informing the Lofti-Fards that their home equity line of credit would end and become due on Aug. 31, 2013; (G) PNC Collection Letters sent to the Lofti-Fards indicating overdue payment amounts; (H) some of the Lofti-Fards' PNC Bank Statements; (I) a PNC Settlement Package that was sent to the Lofti-Fards presumably at their request; and (J) the PNC Bank Collection History printouts from 2009 forward. He testified that these documents were kept in the ordinary course of business and that the documents involved the Lofti-Fards' Note and Mortgage at issue in this case.

{¶ 16} Again, the Lofti-Fards objected to every document admitted through Hardwick's testimony during trial. On cross-examination, the Lofti-Fards established that none of the documents from PNC establish a zero balance or draws on the HELOC.

{¶ 17} Surf City called Ali Lofti-Fard ("Ali") to testify on cross-examination. Ali confirmed his home phone number and his home address at 2243 Georgia Drive in Westlake. He confirmed his signature on the Note and Mortgage documents, although he did not specifically remember applying for the HELOC. Ali testified that he owed 15-18 different properties back then and had "a lot of accounts." (Tr. 64.) He testified that he has been married 50 years and he handles the finances. At first, Ali testified that he did not make any advances on the HELOC, but after being confronted with his deposition testimony, he admitted that "maybe; but I don't remember that I did." (Tr. 67.) Ali did not recall making any payments on the HELOC or receiving any phone calls or any statements or letters

from PNC. Ali claimed that the only correspondence he recalled receiving was the letter from Surf City. He denied making any of the payments depicted in Surf City's exhibit J.[4] Ali denied requesting or receiving PNC's request for settlement documents in 2017. (Surf City's exhibit I.) Ali was adamant that he did not draw on the account. He testified that he did not object to the amount owed because he never knew about it until the letter from Surf City.

{¶ 18} At the close of the case, over the objection of the Lofti-Fards, Surf City's exhibits A through J and L through N were admitted into evidence.[5] On March 13, 2024, the trial court issued its order and findings of fact and conclusions of law granting judgment on the complaint in favor of Surf City in the sum of $84,814.98, plus interest at the rate of 4.25% per annum from September 28, 2014, as well as a decree of foreclosure. The trial order also granted judgment in favor of Surf City on the counterclaims. The Lofti-Fards appealed the trial court's decision.

{¶ 19} For ease of discussion, the assignments of error will be addressed out of order.

---

[4] Surf City's exhibit J seems to depict several payments made on the HELOC prior to its end date. The exhibit is a coded payment history; however, Hardwick was not asked to explain the codes or the document.

[5] Surf City's exhibit K, Ali's deposition testimony, was not offered into evidence.

## II. Law and Analysis

### Excusable Neglect

{¶ 20} In the Lofti-Fards' third assignment of error they contend that the trial court abused its discretion by granting Surf City's Civ.R. 60(B), motion for relief from judgment arguing that Surf City did not prove excusable neglect. We disagree.

{¶ 21} A trial court is vested with discretion in determining whether to grant a motion for relief from judgment under Civ.R. 60(B) and the court's ruling will not be disturbed on appeal absent an abuse of discretion. *SPCG Properties, Ltd. v. Moore*, 2024-Ohio-4907, ¶ 7-9 (8th Dist.), citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20 (1988). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 22} In order to prevail on a Civ.R. 60(B) motion, the moving party is required to establish (1) a meritorious claim or defense in the event relief is granted, (2) entitlement to relief under one of the provisions of Civ.R. 60(B)(1) through (5), and (3) timeliness of the motion. *GTE Automatic Elec. Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus.

{¶ 23} Civ.R. 60(B) provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect . . . or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was

entered or taken.  A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.

{¶ 24} Within this assignment of error, the Lofti-Fards do not challenge the timeliness of the motion, nor whether Surf City had a meritorious claim (the merits of the claim will be discussed below).  Rather, the Lofti-Fards contend that Surf City's failure to calendar the due date is not excusable neglect.  Surf City argued in its motion before the trial court that Surf City was "completely unaware of its filing and [Surf City] reasonably believed it was actively engaged in settlement negotiations with [the Lofti-Fards]." (Surf City's Motion, Jan. 25, 2022.)

{¶ 25} In *Cleveland Mun. School Dist. v. Farson*, 2008-Ohio-912 (8th Dist.), this court adopted "the *Pioneer* [*Invest. Servs. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380 (1993)] standard for determining what constitutes 'excusable neglect' under Civ.R. 60(B)(1)." *Id*. at ¶ 14.  We explained that the term "'excusable neglect'" requires an "'equitable'" review that considers "'all relevant circumstances surrounding the party's omission.'"  *Id*. at ¶ 12, quoting *Pioneer* at 395.  Accordingly, a court is to consider circumstances such as "'the danger of prejudice to the [movant], the length of the delay and its potential impact on judicial proceedings, the reasons for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'"  *Id*. at ¶ 12, quoting *Pioneer* at 395.

{¶ 26} Here, the trial court held a hearing on Surf City's motion and found that, although the court's docket demonstrates that Surf City's attorneys were

notified through the electronic filing system, the notifications were routed to a paralegal who attested in her affidavit attached to the motion and testified that she did not "recall getting the notifications, or more importantly, passing them along to [the] attorneys." (Magistrate's Decision, Mar. 25, 2022.) The trial court reasoned that "[a]bsent a history of errors or other 'disregard for the judicial system,'" Surf City's inadvertent clerical error constituted excusable neglect. (Magistrate's Decision, Mar. 25, 2022.)

{¶ 27} The trial court's decision relied on *Mendes v. Lowe's Home Ctrs., L.L.C.*, 2020-Ohio-1283 (8th Dist.), in which this court affirmed the trial court's decision to grant plaintiff's motion for relief from judgment based on excusable neglect. The facts in *Mendes* are similar to the facts in this case. In *Mendes*, the defendant filed a motion for summary judgment and the plaintiff failed to respond. After the trial court granted the unopposed motion, the plaintiff filed a motion for relief from judgment, admitting "the inadvertent clerical failure to calendar the response date and argued that the parties had been actively engaged in ongoing discovery and the pursuit of resolution of the case including preparation for the scheduled arbitration." *Id*. at ¶ 3. This court found that the record did not support the conclusion that Mendes "deliberately" or "willfully" failed to answer the motion for summary judgment, or that Mendes's counsel displayed "a disregard for the judicial system and the rights of the [defendant]." *Id*. at ¶ 15-16.

{¶ 28} In the instant case, as in *Mendes*, the parties were actively involved in the case, attending pretrials, exchanging discovery, conducting depositions, and

discussing settlement when the motion for summary judgment was filed and granted. According to Surf City's affidavit, the parties exchanged multiple emails regarding discovery documents and settlement negotiations after the Lofti-Fards filed for summary judgment, and the content of the emails suggested that Surf City was completely unaware of the Lofti-Fards' pending motion.

{¶ 29} After reviewing the record before us, we find that it supports the conclusion that Surf City did not "deliberately" or "willfully" fail to answer the motion for summary judgment. *Farson* at ¶ 15. Further "[i]t is 'a basic tenet of Ohio jurisprudence that cases should be decided on their merits.'" *Id*., quoting *Perotti v. Ferguson*, 7 Ohio St.3d 1, 3 (1983). Hence, we find that it was not an abuse of discretion when the trial court granted Surf City relief from judgment.

{¶ 30} Accordingly, the Lofti-Fards' third assignment of error is overruled.

## Foreclosure Action

{¶ 31} In the Lofti-Fards' first assignment of error, they maintain that the trial court incorrectly "focused on the matter being a mortgage foreclosure[,]" when it is an "action on account." (The Lofti-Fards' brief, p. 11.) The Lofti-Fards, relying on *Garfield Estates, L.L.C. v. Whittington*, 2021-Ohio-211 (8th Dist.), argue that a home equity line of credit is similar to a credit card and an "action on account" requires that Surf City prove "(1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) a summarization by means of a running or developing balance, or

an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due." *Id*. at ¶ 20. The Lofti-Fards emphasize that Surf City failed to provide a complete payment history with a beginning balance of zero as is required to establish an amount due on an account. Alternatively, the Lofti-Fards argue that even if this is a mortgage foreclosure, Surf City did not establish the amount due because the evidence did not demonstrate that the Lofti-Fards drew on the HELOC.

{¶ 32} The trial court held, and this court agrees, that this is not an action on account, but rather a foreclosure on a promissory note and mortgage. (Trial Order, Apr. 10, 2024.) Although a home equity line of credit operates similarly to a credit card, it is secured by a mortgage on property, which gives the lender the ability to foreclose on the property when the debtor is in default. A foreclosure action requires that Surf City prove (1) that the plaintiff is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the plaintiff is not the original mortgagee, the chain of assignments and transfers; (3) that the mortgagor is in default; (4) that all conditions precedent have been met; and (5) the amount of principal and interest due. *Deutsche Bank Natl. Trust Co. v. Najar*, 2013-Ohio-1657, ¶ 17 (8th Dist.).

{¶ 33} The Lofti-Fards do not contest that Surf City is the party entitled to enforce the instrument, or the chain of assignments. The Lofti-Fards argue that Surf City failed to prove that the mortgage was in default and the amount of principal and interest owed. They contend that the only evidence in the record "presumed that

[the Lofti-Fards] drew the entire equity line limit. Surf City never provided information confirming that its presumption is true. Surf City presented no documents showing draws against the credit line." (The Lofti-Fards' brief, p. 13.)

{¶ 34} This court has made clear that there is no requirement that a plaintiff in a foreclosure action provide a complete payment history in order to establish its entitlement to judgment. *Wilmington Trust Natl. Assn. v. Boydston*, 2017-Ohio-5816, ¶ 29 (8th Dist.), citing *Najar* at ¶ 40. A number of other appellate districts have also held that an account history is not necessary in a foreclosure action. *See Wells Fargo Fin. Ohio 1, Inc. v. Robinson*, 2017-Ohio-2888, ¶ 17 (2d Dist.) ("In a foreclosure action, a plaintiff is not required to provide a complete 'payment history' to receive summary judgment."); *Fifth Third Mtge. Co. v. Fantine*, 2015-Ohio-4260, ¶ 21 (5th Dist.) ("There is no requirement that a party seeking a foreclosure submit a payment history to demonstrate entitlement to summary judgment.") Actually, when determining the propriety of summary judgment in foreclosure actions, courts have consistently held that "'an averment of outstanding indebtedness made in the affidavit of a bank loan officer with personal knowledge of the debtor's account is sufficient to establish the amount due and owing on the note, unless the debtor refutes the averred indebtedness with evidence that a different amount is owed.'" *Id.*, quoting *Natl. City Bank v. TAB Holdings, Ltd.*, 2011-Ohio-3715, ¶ 12 (6th Dist.). *See also Cent. Mtge. Co. v. Elia*, 2011-Ohio-3188, ¶ 7 (9th Dist.) ("An affidavit stating [a] loan is in default is sufficient for purposes of Civ.R. 56, in the absence of evidence controverting those averments.").

{¶ 35} Here, the evidence was uncontested that the Lofti-Fards opened a HELOC for $85,000.00, which was secured by a mortgage on their home in Westlake. The evidence further established that the HELOC ended and matured on August 31, 2013, and that the principal amount due on the account at that time was $84,814.98. (Surf City's exhibits L and M). The evidence established that the Lofti-Fards did not make any payments on the HELOC after the account ended and matured. Although the Lofti-Fards maintained that they never drew on the account and never received any statements, letters, or other correspondence from PNC, the trial court clearly found Ali's testimony not credible when deciding in favor of Surf City.

{¶ 36} When reviewing a case that involves a bench trial, we have previously stated:

> "'[I]t is well established that it is the role of the trial judge to determine the credibility of witnesses and the weight to be given to their testimony. The trial court has a superior opportunity to observe the witnesses. Reviewing courts will not reverse a trial court's judgment on manifest-weight-of-the-evidence grounds when its determination is supported by some competent, credible evidence going to all essential elements of the case.'" *KP Adjusters, Inc. v. Prime Commercial Credit*, 8th Dist. Cuyahoga No. 73931, 1999 Ohio App. LEXIS 822 at *10-11 (Mar. 4, 1999), citing *Baker v. Conlan*, 5th Dist. Hamilton No. C-880630, 66 Ohio App.3d 454, 463, 585 N.E.2d 543 (1990), citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (May 24, 1978), syllabus.

*Rose of Sharon Fence Supply, Ltd. v. Davis*, 2016-Ohio-924, ¶ 35 (8th Dist.), quoting *Riser Foods Co. v. Miles Food Ctr.*, 2002-Ohio-3111, ¶ 10 (8th Dist.). Accordingly, we will not reverse the trial court's decision if it is supported by some

competent, credible evidence going to the essential elements of the case, which leads us to the Lofti-Fards' second assignment of error, wherein the Lofti-Fards challenge the admissibility of the evidence Surf City introduced at trial.

## Admissibility of Evidence

{¶ 37} In the second assignment of error, the Lofti-Fards maintain that the evidence the trial court relied on when making its decision was inadmissible hearsay. They assert that exhibits F, G, H, I, J, L, M, and N were irrelevant hearsay that should have been excluded at trial.

{¶ 38} We note that decisions regarding the admissibility of evidence are within the broad discretion of the trial court. *Beard v. Meridia Huron Hosp.*, 2005-Ohio-4787, ¶ 20, citing *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). A decision to admit or exclude evidence will be upheld absent an abuse of discretion. *Id.*, citing *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165 (1980). As we stated above, an abuse of discretion occurs when a court exercises its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority. *Abdullah*, 2021-Ohio-3304, ¶ 35. Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. *Beard* at ¶ 20.

{¶ 39} The Lofti-Fards' first argument is that the exhibits are not relevant or are prejudicial. The exhibits at issue include: (F) PNC Notices informing the Lofti-Fards that their home equity line of credit would end Aug. 31, 2013; (G) PNC Collection Letters informing the Lofti-Fards of the overdue payment amounts; (H)

some of the Lofti-Fards' PNC Bank Statements; (I) a PNC Settlement Package requested by the Lofti-Fards; (J) the PNC Bank Collection History printouts of the Lofti-Fards' account; (L) LHFS's letter to the Lofti-Fards advising of the transfer from PNC to LHFS as servicer of the loan; (M) LHFS's letter to the Lofti-Fards advising of the sale of the Note and Mortgage to Surf City; and (N) LHFS's letter to the Lofti-Fards advising of the requested payoff amount.

{¶ 40} To be relevant and therefore admissible, evidence must have a tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Here, the exhibits at issue are clearly relevant to Surf City's case, because the exhibits establish that the HELOC ended and matured; that the Lofti-Fards had defaulted on their payments; that the Lofti-Fards were aware of debt; and the documents establish the amount due on the account.

{¶ 41} Nevertheless, even if the evidence is relevant, it must be excluded under Evid.R. 403(A) "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." When making this determination, "'the evidence is viewed in a light most favorable to the proponent, maximizing its probative value and minimizing any prejudicial effect to the party opposing admission.'" *Bromall v. Select Specialty Hosp.*, 2022-Ohio-2496, ¶ 55 (8th Dist.), quoting *State v. Lakes*, 2007-Ohio-325, ¶ 22 (2d Dist.). "Unfair prejudice does 'not mean the damage to a [party's] case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to

suggest decision on an improper basis.'" *State v. Lang*, 2011-Ohio-4215, ¶ 89, quoting *United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993).

{¶ 42} Surf City's documents are certainly prejudicial to the Lofti-Fards, but that is the nature of litigation. One party is going to have an unfavorable decision because the facts do not cut in their favor. Evidence is only unfairly prejudicial when it is introduced for the sole purpose of inflaming the factfinder into making their decision based on something other than the facts; that is not the case here. Accordingly, we find that the probative value of Surf City's documents are substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the court.

{¶ 43} Next, the Lofti-Fards argue that the documents are classic hearsay that were not properly authenticated. Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Although Evid.R. 802 generally bars the admission of hearsay evidence, there are exceptions. Pertinent to this appeal is what is commonly known as the "business records exception" under Evid.R. 803(6).

{¶ 44} Evid.R. 803(6) provides that "records of regularly conducted activity" are not excluded by the hearsay rule, even though the declarant is available as a witness. Such documents include "[a] memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course

of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Evid.R. 803(6).

{¶ 45} Prior to admission of a business record, the business record must first be properly identified or authenticated "by sufficient evidence to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). Authentication may be satisfied by "testimony of [a] witness with knowledge." Evid.R. 901(B)(1). Moreover, "[a] witness authenticating records need not have personal knowledge of the creation of the document." *Bank of New York Mellon v. Roulston*, 2017-Ohio-8400, ¶ 16 (8th Dist.); *Bank of New York Mellon v. Fisher*, 2020-Ohio-4742, ¶ 51 (8th Dist.); *Jefferson v. CareWorks of Ohio, Ltd.*, 2011-Ohio-1940, ¶ 11 (10th Dist.). "'[A] court may admit a document as a business record even when the proffering party is not the maker of the document, if the other requirements of Evid.R. 803(6) are met and the circumstances suggest that the record is trustworthy. * * * Trustworthiness of a record is suggested by the profferer's incorporation into its own records and reliance on it.'" (Citations omitted.) *HSBC Bank USA, Natl. Assn. v. Gill*, 2019-Ohio-2814, ¶ 9-10 (1st Dist.) quoting *U.S. Bank, N.A. v. Christmas*, 2016-Ohio-236, ¶ 18 (2d Dist.).

{¶ 46} With the foregoing in mind, we find that the documents admitted through Hardwick, which included exhibits (F) PNC Notices informing the Lofti-

Fards that their home equity line of credit would end Aug. 31, 2013; (G) PNC Collection Letters informing the Lofti-Fards of the overdue payment amounts; (H) the Lofti-Fards' PNC Bank Statements; (I) a PNC Settlement Package requested by the Lofti-Fards; and (J) the PNC Bank Collection History printouts of the Lofti-Fards account, were admissible under the business records exception. Hardwick testified that he is the Senior Default Litigation Specialist at PNC Bank and that his job entails attending trials, hearings, mediations, and depositions. Hardwick explained that he reviewed payment histories, records, and has access to all of the bank's systems, including the documents pertaining to the Lofti-Fards' account. Harwick properly identified and authenticated these documents and testified that they are kept in the ordinary course of business by PNC. Further, the Lofti-Fards have done nothing to cast doubt on the trustworthiness of these documents. Therefore, we hold that the trial court did not abuse its discretion in admitting Surf City's exhibits F through J.

{¶ 47} In addition, we find that the documents admitted through Kass, which included exhibits (L) LHFS's letter to the Lofti-Fards advising of the transfer from PNC to LHFS as servicer of the loan; (M) LHFS's letter to the Lofti-Fards advising of the sale of the Note and Mortgage to Surf City; and (N) LHFS's letter to the Lofti-Fards advising of the requested payoff amount, were also admissible under the business records exception. Kass testified that he was the managing member of Surf City and that he is familiar with the company's books and records, including the documents pertaining to the Lofti-Fards. He explained how he directly acquired

the documents from LHFS through their computer portal. Kass testified that these documents were incorporated into their file on the Lofti-Fards and kept by Surf City in the ordinary course of business. Accordingly, we hold that the trial court did not abuse its discretion in admitting Surf City's exhibits L through M.

{¶ 48} Having determined that Surf City's exhibits were properly admitted, and this evidence established the principal amount and interest due and that the Lofti-Fards were in default, it fell to the Lofti-Fards to present contrary evidence, which they failed to do. Therefore, we find that the trial court's decision is supported by competent, credible evidence going to the essential elements of the case.[6]

{¶ 49} Accordingly, the Lofti-Fards' first and second assignments of error are overruled.

{¶ 50} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

---

[6] The Lofti-Fards also contend that the trial court based its decision on evidence not admitted at trial, including affidavits and depositions. While it appears from the trial court's order that there is validity to the Lofti-Fards' contention, even without this evidence, we still find that the trial court's verdict was supported by some competent, credible evidence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR